IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:12-CR-5-FL-2

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| DERONTAE TREMAINE LEE, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on defendant's motion to suppress (DE # 39). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge William A. Webb entered memorandum and recommendation ("M&R") wherein he recommends that the court deny defendant's motion to suppress. Defendant timely filed objection to the M&R, and the government responded. In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court adopts the recommendation of the magistrate judge and denies defendant's motion to suppress.

## BACKGROUND

Defendant was indicted on January 24, 2012, with being a felon in possession of a firearm and aiding and abetting in violation of 18 U.S.C. §§ 922(g)(1) and 924. On June 4, 2012, defendant filed the instant motion to suppress. The suppression motion seeks to suppress all evidence resulting from a traffic stop and protective search that occurred on September 22, 2011.

The magistrate judge conducted an evidentiary hearing on July 25, 2012. At the hearing the

government presented the testimony of Sergeant Robert Eugene Ides. The parties filed supplemental memoranda after the hearing which the magistrate judge considered in his determinations as outlined in the M&R.

## STATEMENT OF FACTS

Based upon the evidence presented at the suppression hearing, the court finds the following facts relevant to disposing of the objections to the M&R.[1] On the evening of September 22, 2011, Detectives Ides, Gonzales, and Sanders of the Onslow County Sheriff's Department ("OCSD") were driving on routine patrol on Richlands Highway. (Tr. Suppression Hr'g. 3:10-14; 4:25.) Richlands Highway is a five-lane divided highway, with a center turn lane. (Id. 5:15.) They noticed a red Chevrolet Cavalier Convertible ("Chevy") in front of them swerving back and forth across the two southbound lanes, at times crossing into the center turn lane. (Id. 5:6-12; 6:5-9.) They also observed the Chevy tap the brakes several times. (Id. 6:20-21.) The speed limit on that stretch of road decreases from fifty five (55) miles-per-hour to forty five (45) miles-per-hour, but the Chevy braked several times before this speed limit change. (Id. 19:16-23.) Following the Chevy closely, the detectives saw there were two men in the vehicle. (Id. 5:21.) The men were reaching back toward the back seat, as well as under the passenger's seat. (Id. 9:22-25; 10:4.) The detectives followed and observed the Chevy for approximately one and one-half miles. (Id. 14:18.) Concerned the driver might be intoxicated, the officers then initiated a traffic stop. (Id. 25:22-25; 6:23.)

Detective Ides asked the driver, Kenneth Shaw, for his license and registration. (Id. 7:4-6.) Shaw did not appear intoxicated, nor did Detective Ides smell any alcohol. (Id. 27:9-10.) According to standard police procedure, Detective Ides then ran a computer check on Shaw's license. (Id.

---

[1] In addition, the court adopts in full the factual findings contained in the M&R not specifically discussed herein.

2

27:12-17.) The check revealed Shaw was on probation for robbery, assault with a deadly weapon inflicting serious injury, and other charges. (Id. 7:20-22.) Detective Ides returned to the vehicle and asked Shaw what he was on probation for. (Id. 8:5-7.) Shaw untruthfully responded it was for stealing a car. (Id. 8:7-8.) Knowing Shaw had answered dishonestly, Detective Ides asked if there were any weapons in the car. (Id. 8:8-10.) Shaw said there were not. (Id. 8:12.)

Detective Ides decided to search the Chevy. (Id. 29:13.) Shaw had already exited the vehicle. (Id. 8:14-15.) Detective Sanders asked defendant to exit as well. (Id. 9:14-15.) Detective Ides went directly to the two areas where had seen Shaw and defendant reaching: the back seat and under the front passengers seat. (Id. 9:22-25; 10-1-5) Officers discovered a firearm wrapped in a black hoodie on the back seat and a 9mm Ruger semiautomatic pistol under the front passenger's seat. (Id.) The officers arrested Shaw and defendant. (Id. 10:14-15.)

## DISCUSSION

A.  Standard of Review

The district court reviews *de novo* those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). The court does not perform a *de novo* review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(c).

3

B.  Analysis

1.  Reasonable Suspicion to Justify the Stop

Defendant first objects to the magistrate judge's finding there was reasonable suspicion to justify a traffic stop based on the record of this case.

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures. U.S. Const. Amend. IV. In Terry v. Ohio, the Supreme Court held that an officer may, consistent with the Fourth Amendment, conduct a "brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is underfoot." Illinois v. Wardlaw, 528 U.S. 119, 123 (2000) (citing Terry, 392 U.S. at 30). Whether reasonable suspicion exists to justify the stop depends on the "totality of the circumstances, including information known to the officers and any reasonable inferences to be drawn at the time of the stop." United States v. Williams, 450 F. App'x. 245, 246 (4th Cir. 2011) (unpublished); United States v. Washington, 457 F. App'x. 346, 347 (4th Cir. 2011) (citing United States v. Sokolow, 490 U.S. 1, 8 (1989)). Reasonable suspicion is an objective test. The court considers the facts as they were known to the officer, not the officer's subjective beliefs. United States v. Foreman, 369 F.3d 776, 781 (4th Cir. 2004). Reasonable suspicion must exist at the time of the stop, not after the fact. United States v. Ienco, 182 F.3d 517, 524 (7th Cir. 1999). The determination of reasonable suspicion must be based on "commonsense judgments and inferences about human behavior," and it is measured by the totality of the circumstances. Id. (citing Wardlow, 528 U.S. at 125 and United States v. Arvizu, 534 U.S. 266, 273 (2002)).

A traffic stop qualifies as a lawful investigatory stop under Terry "whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation." Arizona

4

v. Johnson, 555 U.S. 323, 327 (2009). In the case of an inquiry into a vehicular violation, the police do not need to have cause to believe any occupant of the vehicle is involved in criminal activity. Id.

In this case, three OCSD detectives observed a vehicle swerving back and forth across two lanes and into the center turn lane and braking several times. Detective Ides, from his training and experience found this to be consistent with the driving patterns of an intoxicated driver. Considering the totality of the circumstances, these facts support an objective reasonable suspicion that criminal activity is afoot, namely: drunk driving. See United States v. Smith, 1994 WL 445705 at *2 (4th Cir. 1994) (officer had reasonable suspicion defendant was intoxicated because defendant was driving below the speed limit and weaving in his lane). Therefore, there was reasonable suspicion to justify a traffic stop.

Furthermore, as the magistrate judge noted, driving over the centerline of the highway is a traffic violation. See N.C. Gen. State. § 20-146(c). Thus, on that ground alone, the stop was lawful. Arizona, 555 U.S. at 327 (2009).

2.  The Legality of the Officers' Questions and Search

Defendant also objects to what he takes to be a lack of clarity in the M&R's discussion of what officers may validly do in a traffic stop, and what is required to legally extend a traffic stop beyond requesting a driver's license and vehicle registration, running a computer check, and issuing a citation if warranted. Defendant contends the officers did not have a lawful basis to extend the stop beyond this. Upon *de novo* review of the standards governing the scope of traffic stops, the court holds that Detective Ides had lawful basis to prolong the stop and to conduct a protective search Shaw's vehicle.

The propriety of a traffic stop is to be analyzed on two fronts. The first is to "analyze

5

whether the police officer's action was justified at its inception." United States v. Digiovanni, 650 F.3d 498, 506 (4th Cir. 2011) (citing United States v. Rusher, 966 F.2d 868, 875 (4th Cir. 1992)). The second is to "analyze whether the police officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop." Id. The court has already found the officers had reasonable suspicion to justify a traffic stop. Thus the police officers' action was justified at its inception and the first prong of the test is satisfied. The remaining inquiry is whether the officers' subsequent actions were reasonably related to the circumstances justifying the stop.

Under this second prong, an officer "must diligently pursue the investigation of the justification for the stop." Id. at 509. The police should engage in "a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." United States v. Sharpe, 470 U.S. 675, 686 (1985). Diligent pursuit of the investigation includes requesting a driver's license and vehicle registration, and running a computer check on these records. United States v. Foreman, 369 F.3d 776, 781 (4th Cir. 2004) (citing Rusher, 966 F.2d at 875). To prolong a traffic stop to investigate a matter outside the scope of the initial stop requires reasonable suspicion or the driver's consent. United States v. Branch, 537 F.3d 328, 336 (4th Cir. 2008).

Questioning unrelated to the purpose of the stop is permissible "provided that the questioning occurs within the timeframe reasonably necessary to effectuate the traffic stop" or causes only a *de minimis* delay. United States v. Mason, 628 F.3d 123, 131-32 (4th Cir. 2010). Moreover, an officer may conduct a lawful "protective search" of a stopped vehicle where an officer possesses "a reasonable belief of both (1) the suspect's dangerousness and (2) the possibility that the suspect might gain immediate control of any weapons inside the vehicle." United States v. Griffin, 589 F.3d

6

148, 153 (4th Cir. 2009).

In this case, the officers' actions following the initial traffic stop were reasonably related to the circumstances that justified the stop, caused only *de minimis* delay, or were supported by reasonable suspicion. Detective Ides initially pulled the Chevy over on reasonable suspicion of drunk driving. Although that suspicion was dispelled when Shaw did not appear intoxicated and Detective Ides smelled no alcohol, Detective Ides also ran a computer check on Shaw's license, which was standard police procedure and a lawful part of any traffic stop. Foreman, 369 F.3d at 781. This check showed Shaw was on probation for robbery, assault with a deadly weapon inflicting serious injury, and other charges. Upon returning to the Chevy, Detective Ides asked Shaw what he was on probation for. Shaw untruthfully answered car theft. This question was not related to driving while intoxicated, but the exchange was very brief. It was a *de minimis* delay that did not impermissibly extend the stop. See e.g., United States v. Guijon-Ortiz, 660 F.3d 757, 769 (4th Cir. 2011) (holding that a delay of "less than 'a few minutes'" to call ICE to verify the validity of defendant's LPR card was lawful as a "single brief detour"); Mason, 628 F.3d at 131-33 (holding that a delay of one and one-half minutes was *de minimis*).

Shaw's false answer regarding his probation, combined with the fact that his probation was for assault with a deadly weapon inflicting serious injury, and with the suspicious movement the detectives observed while following the Chevy, gave the officers a reasonable suspicion that Shaw and defendant were potentially dangerous. While prior criminal activity alone is generally insufficient to create reasonable suspicion, it is a factor that may be weighed in establishing reasonable suspicion when considering the totality of the circumstances. U.S. v. Powell, 666 F.3d 180, 188 (4th Cir. 2011). The same applies for a falsehood told to the police. Id. at 188-89.

7

Accordingly, the officers searched "the passenger compartment of [the] automobile, limited to those areas in which a weapon may be placed or hidden," in accordance with Michigan v. Long, 463 U.S. 1032, 1049 (1983). The officers' search of the car was supported by a reasonable suspicion that Shaw and defendant were dangerous and could gain immediate control of weapons that may be inside the vehicle. It was therefore lawful.

Defendant cites two cases in which the Fourth Circuit held police did not have a reasonable suspicion to stop defendants to investigate possible illegal activity: United States v. Foster, 634 F.3d 243 (4th Cir. 2011), and United States v. Sprinkle, 106 F.3d 613 (4th Cir. 1997). Defendant argues those cases show the factors in this case were not enough to give the detectives reasonable suspicion to further detain defendant and Shaw and to perform a protective search of Shaw's car. Defendant's reliance on Foster and Sprinkle is misplaced.

Defendant cites Foster's language that "[a] prior criminal record is not, standing alone, sufficient to create reasonable suspicion." Foster 634 F.3d at 246. He goes on to note the Fourth Circuit found that Foster's movement inside the parked vehicle could have been innocent activity. Id. at 247. There are, however, important differences between Foster and this case.

In Foster, the officer saw Foster sit up from a crouching position and begin shifting his arms when Foster saw the officer. Id. at 245. The officer had a recollection that Foster had been arrested before on a marijuana-related charge, but did not know the outcome of that arrest. Id. at 246. In this case, by contrast, the detectives saw two men moving in the vehicle while one of the men was driving it - movement that ostensibly led a sober driver to swerve back and forth across two lanes of traffic while tapping the brakes. The officers then discovered the driver was on probation for a violent gun charge. So unlike Foster, the detectives here knew of an actual conviction. Furthermore,

8

Shaw lied to the police about what his probation was for. There was no analogous factor in Foster. Taken together with Shaw's probation for the assault with a deadly weapon inflicting serious injury, and the movement in the car, police had a reasonable suspicion Shaw and defendant could be dangerous and hiding weapons.

Defendant next notes the five factors in Sprinkle that were insufficient to justify a stop were 1) knowing that the defendant had a criminal record, 2) was recently released from prison, 3) being spotted in a high crime neighborhood, huddling together with the other defendant toward the center console with their hands close together, 4) the defendant put his head down as the officers walked by the car as if to avoid recognition, and 5) defendant drove away as soon as the officers walked by the car. Defendant argues these are similar to the factors in this case, and show that more is required for reasonable suspicion to prolong a traffic stop than the factors that existed in this case.

There were other factors important to the Fourth Circuit's finding in Sprinkle, however. In addition to the five factors, *supra*, the officer observed other facts which tended to dispel reasonable suspicion. When the officer saw the defendants with their hands close together, he could actually see their hands, and he saw no drugs, drug paraphernalia, money, weapons, or either man trying to conceal any object. Sprinkle, 106 F.3d 617. The officer "could actually see that nothing of a criminal nature was happening in the car." Id. at 619. Sprinkle and his passenger also drove away in a normal unhurried manner, not suspiciously. Id. at 618. In examining the totality of the circumstances, the court found these factors tended to negate reasonable suspicion. In this case, there was not a similar combination of factors. Therefore both Foster and Sprinkle are distinguishable from this case.

9

## CONCLUSION

Upon *de novo* review of those portions of the magistrate judge's M&R to which specific objections have been filed, and upon considered review of those portions of the M&R to which no such objection has been made, the court overrules defendant's objections, ADOPTS the findings and recommendations of the magistrate judge in full, and DENIES the defendant's motion to suppress (DE # 39).

SO ORDERED, this the 6th day of September, 2012.

LOUISE W. FLANAGAN
United States District Judge